IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADRI LASHAE TAYLOR,
          Plaintiff,

v.                                   Civil Action No. 3:19-cv-468

ANDREW M. SAUL, Commissioner of
Social Security,
          Defendant.

## OPINION

In 2015, Adri Lashae Taylor filed a claim with the Social Security Administration ("SSA") for disability benefits ("DIB") and supplemental social security income ("SSI"). After the SSA denied her claim, Taylor filed this case, challenging the SSA Commissioner's final decision. The Commissioner has moved for summary judgment, arguing that the Administrative Law Judge ("ALJ") reasonably determined that Taylor could perform work existing in significant numbers in the national economy. Because the ALJ applied correct legal standards and supported his findings with substantial evidence, the Court will grant summary judgment in favor of the Commissioner pursuant to section 205(g) of the SSA, 42 U.S.C. § 405(g).

## I. BACKGROUND

Taylor filed a claim for DIB and SSI on May 1, 2015. The SSA denied Taylor's claim on initial review on January 11, 2016, and again on reconsideration on August 25, 2016. Taylor requested a hearing before an ALJ, which the SSA held on March 23, 2018. On August 8, 2018, the ALJ denied Taylor's claim, concluding that Taylor was not disabled because she could perform work existing in significant numbers in the national economy. Taylor appealed the ALJ's decision. On April 22, 2019, the SSA's Appeals Council (the "Appeals Council") denied Taylor's request for review, rendering the ALJ's decision the final decision of the Commissioner.

On June 25, 2019, Taylor filed this case, challenging the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  On September 3, 2019, the Commissioner filed his answer.  On October 4, 2019, Taylor moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  On November 18, 2020, the Commissioner also moved for summary judgment, arguing that there is no genuine issue as to any material fact and that substantial evidence supports the Commissioner's final decision.

## II. LEGAL STANDARD

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the SSA's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, a court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).  In considering the decision of the Commissioner

2

based on the record as a whole, a court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the Commissioner's findings as to any fact, the reviewing court must affirm those findings regardless of whether that court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the reviewing court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA's regulations set forth a five-step process that the agency uses to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. **THE ALJ'S DECISION**

On March 23, 2018, the ALJ held a hearing during which Taylor[1] and a vocational expert ("VE") testified. (R. at 62-89.) On August 8, 2018, the ALJ issued a written opinion, concluding that Taylor did not qualify as disabled under the Social Security Act (the "Act"). (R. at 7-27.)

The ALJ followed the five-step evaluation process established by the regulations in analyzing Taylor's claim. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ concluded that Taylor had not engaged in substantial gainful activity since April 22, 2015, her alleged onset date. (R. at 13.) At step two, he concluded that Taylor had the following severe impairments: seizure disorder, asthma, obesity, major depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder. (R. at 13-14.) At step three, the ALJ concluded that Taylor's impairments did not meet the criteria of any listing, and found that, with regard to concentrating, persisting, or maintaining pace, she had a moderate limitation. (R. at 14.)

In assessing Taylor's RFC, the ALJ determined that Taylor could perform a full range of work at all exertional levels with the following non-exertional limitations:

> She cannot climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to dusts, odors, fumes, and pulmonary irritants. She cannot work around unprotected heights or moving, mechanical parts. She is limited to work involving only simple, routine tasks, and can concentrate on such tasks for up to two hours before requiring a break. She can interact occasionally with supervisors and coworkers, but should not interact with the public. She can work in proximity with coworkers, where interaction is not required to complete tasks. She can frequently respond appropriately to changes in a routine work setting. She cannot perform work at a production rate pace, but she can complete goal-oriented work. She requires a low-stress environment, defined as one involving only occasional decision-making or use of work-related judgment.

(R. at 15-16.)

---

[1] Taylor was represented by counsel at the hearing.

At step four, the ALJ determined that Taylor had no past relevant work. (R. at 20.) At step five, the ALJ determined that, considering Taylor's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Taylor can perform. (R. at 21.) For those reasons, the ALJ concluded that Taylor did not qualify as disabled under the Act.

## IV. <u>DISCUSSION</u>

Taylor, twenty-two years old at the time of this Opinion, has no past relevant work. (Dk. No. 10, at 3, 6.) She applied for DIB and SSI, alleging disability from the following impairments: attention deficit hyperactivity disorder, seizure disorder, learning disability, and intellectual function deficiencies. (*Id.* at 4.) In her appeal to this Court, Taylor asserts that the ALJ erred in two respects: first, that the ALJ's RFC finding, which failed to include the limitation that Taylor would require extra supervision in a work setting, was not supported by substantial evidence; and second, that the ALJ did not support his step-five decision with substantial evidence because he relied on an improperly vague hypothetical question posed to a VE. (*Id.* at 3.) For the reasons set forth below, the ALJ did not err in his decision.

### A. *The RFC Finding*

Prior to step four of the ALJ's sequential analysis, the ALJ must determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. §§ 404.1545(b), 416.945(b). Generally, the claimant is responsible for providing the evidence that the ALJ uses in making an RFC determination. §§ 404.1545(a)(3), 416.945(a)(3). Before determining that a claimant is not disabled, however, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary.

§§ 404.1545(a)(3), 416.945(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. *See Carter v. Astrue*, No. 3:10-cv-510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *see also* §§ 404.1545(e), 416.945(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (quoting SSR 96-8p).

The ALJ's failure to conduct a function-by-function analysis does not necessarily require remand. The Fourth Circuit has rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 656. Indeed, in the absence of an explicit function-by-function analysis, a reviewing court must assess whether the ALJ's RFC analysis considered the relevant function, whether his decision provides a sufficient basis to review his conclusions, and ultimately, whether that decision is supported by substantial evidence in the record. *See Miguelina S. v. Saul*, No. 3:19-cv-465-HEH, 2020 WL 2737506, at *8 (E.D. Va. May 26, 2020).

Taylor contends that substantial evidence does not support the RFC because the ALJ did not consider the limitation that Taylor would require extra supervision in a work setting. (Dk. No. 10, at 14.) She asserts that the ALJ did not properly consider testimony from Dr. Robert Buncher,

No. 10, at 14.) She asserts that the ALJ did not properly consider testimony from Dr. Robert Buncher, Taylor's consulting examiner.[2] (Dk. No. 10, at 11-12.) Dr. Buncher opined that Taylor would require extra supervision in a work setting due to her difficulties with attention and focus. (R. at 646-51.) Thus, Taylor argues that the ALJ "cherry-pick[ed] facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017); (Dk. No. 10, at 4.) Taylor contends that the ALJ's omission leaves the Court without a way of evaluating the basis for the ALJ's decision. She argues that the Court must therefore remand the case to the SSA for further explanation or investigation. (Dk. No. 10, at 15.)

As noted above, in the RFC, the ALJ determined that Taylor had the following non-exertional limitations:

> She cannot climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to dusts, odors, fumes, and pulmonary irritants. She cannot work around unprotected heights or moving, mechanical parts. She is limited to work involving only simple, routine tasks, and can concentrate on such tasks for up to two hours before requiring a break. She can interact occasionally with supervisors and coworkers, but should not interact with the public. She can work in proximity with coworkers, where interaction is not required to complete tasks. She can frequently respond appropriately to changes in a routine work setting. She cannot perform work at a production rate pace, but she can complete goal-oriented work. She requires a low-stress environment, defined as one involving only occasional decision-making or use of work-related judgment.

(R. at 15-16.)

---

[2] Taylor visited Dr. Buncher on December 12, 2015, for a mental status examination and WAIS-IV. (R. at 646-51.) Dr. Buncher noted that Taylor's performance was "significantly different and significantly poorer" compared to an evaluation conducted in 2009. (R. at 648-49.) Although Dr. Buncher noted that Taylor appeared to try her best, Dr. Buncher opined that Taylor might perform better on days when she was not depressed. (R. at 649.) In May, 2016, another psychologist administered similar testing, and Taylor's performance improved dramatically. (R. at 18.) Indeed, the medical record confirms that the results of Dr. Buncher's evaluation were inconsistent with both prior and subsequent evaluations. (*Compare* R. at 609-11, *with* R. at 667-68.)

evaluating the basis for the ALJ's decision. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "A proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). According to Taylor, the ALJ's RFC analysis lacks the second component, thereby "frustrating the Court's meaningful review" of the findings. *Id.*

To satisfy the logical explanation component, the ALJ must not only summarize the evidence that he found credible but also must explain how he came to his conclusion based on the evidence. *Id.* The ALJ explained that he discounted Dr. Buncher's testimony because it conflicts with the evidence as a whole. (R. at 20.) Dr. Buncher's evaluation found that Taylor would have trouble interacting with coworkers and the public and would require special or additional supervision to maintain on-task behavior. (R. at 651.) In contrast, the majority of the testimony indicates that Taylor was easy to deal with, cooperative during appointments and interactions with others, and could remain on task while performing simple work activities. (R. at 18-20.) A review of the record confirms that substantial evidence supports this conclusion. (*See, e.g.*, R. at 117-18, 134, 411, 414, 649-51, 666-69.) For this reason, the ALJ chose not to give Dr. Buncher's testimony much weight.

Thus, the ALJ did not ignore the testimony regarding her need for extra supervision when formulating the RFC. Rather, he considered the testimony and explained the weight he gave the testimony and the reasons for that weight.[3] Accordingly, substantial evidence supports the RFC.

---

[3] (R. at 19-20) (explaining the varying degrees of consistency of the different parts of evidence); *see Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (concluding that the ALJ erred by failing to sufficiently explain how she weighed the significant evidence).

### B. The Hypothetical Question

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant could perform work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966.  The Commissioner can carry his burden in the final step with the testimony of a VE.  §§ 404.1566(e), 416.966(e).  During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  The testimony of the VE becomes "relevant or helpful" only when the hypothetical posed represents all of the claimant's substantiated impairments. *Id.*

Courts in the Fourth Circuit, however, have repeatedly held that hypotheticals posed to a VE need not include a literal recitation of a claimant's RFC.[4]  Thus, a hypothetical is appropriate if it adequately reflects the limitations supported by the record, even though it may not precisely capture a plaintiff's RFC. *Powell v. Astrue*, No. SKG 10-02677, 2013 WL 3776948, at *7 (D. Md. July 7, 2013).  Further, if an ALJ fails to account for a limitation in his hypothetical to a VE, a court will not remand the case if the omission would not change the substance of the decision. *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005).  Accordingly, if the jobs listed by the VE in response to a hypothetical ultimately account for the omitted limitations, a court will affirm

---

[4] *See, e.g., Russell v. Barnhart*, 58 F. App'x 25, 30-31 (4th Cir. 2003) (per curiam) (finding that the ALJ adequately captured the plaintiff's diminished intellectual capacity by including limitations in the hypothetical about the plaintiff's ability to maintain attention); *Yoho v. Comm'r*, 168 F.3d 484, *3 (4th Cir. 1998) (table decision) ("There is no obligation, however, to transfer the findings on the PRTF verbatim to the hypothetical questions."); *Jones v. Astrue*, No. CBD-09-2314, 2010 WL 4923294, at *11 (D. Md. Nov. 29, 2010) (holding that it was "not fatal" for the ALJ to describe the plaintiff's limitations instead of using exact terminology).

the ALJ's step-five determination. *See McClellan v. Comm'r*, No. SAG-12-1767, 2013 WL 1703879, at *4 (D. Md. Apr. 18, 2013) (concluding that the ALJ committed harmless error when omitting the plaintiff's climbing limitations from his hypotheticals because the jobs listed by the VE did not require climbing).

Here, the ALJ asked the following hypothetical question:

> Please assume a hypothetical individual with the same age, education, and work experience as the claimant with the following limitations. I note there's no exertional limitations in this case, and we'll put no climbing of ladders, ropes, scaffolds, only occasional exposure to dust, odors, fumes, and pulmonary irritants, no exposure to unprotected heights, no exposure to moving mechanical parts, able to concentrate in the workplace for two hours before requiring a break, occasionally interact with supervisors, occasionally interact with coworkers, never interact with the general public, frequently respond appropriately to changes in a routine work setting, no production rate pace work but rather goal-oriented work. In your opinion would there be jobs in the national economy this hypothetical person could perform?

(R. at 69.)

Taylor argues that the ALJ erred at step five by improperly relying on VE testimony given in response to this hypothetical question. First, she argues that the ALJ's hypothetical did not mention Taylor's limitation to simple, routine tasks. Second, she contends that the hypothetical included an unacceptable limitation to "no production rate pace work but rather goal-oriented work." (Dk. No. 10, at 18.) (citing R. at 15-16.) The Court will consider each argument in turn.

## 1. *The Omission*

For VE opinion testimony to be reliable, the testimony "must have been given in response to hypothetical questions that have fairly stated the claimant's impairments as established by the evidence." *Winford v. Charter*, No. 2:95-cv-132, 1995 U.S. Dist. LEXIS 20547 (E.D. Va. 2015) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). Taylor argues that the ALJ's

hypothetical did not fairly state her impairments because it omitted her limitation to "simple[,] routine tasks." (Dk. No. 10, at 18.)

Although the ALJ's hypothetical did not include a limitation to simple, routine tasks, the VE's response accounted for the limitation. The VE concluded that the hypothetical individual could perform "unskilled" jobs. (R. at 69.) As the ALJ discussed in his opinion, the SSA has defined "unskilled" jobs by virtue of their simple tasks and routine nature. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a); (R. at 21.) Thus, the record establishes that even if the ALJ had included the limitation to simple, routine tasks, the VE's response would not have changed. *See McClellan*, 2013 WL 1703879, *4; (R. at 69-70.)

Further, the VE concluded that the hypothetical individual could perform the unskilled jobs of "laundry worker and cleaner," which are reasoning level two jobs. *See Laundry Worker*, Dictionary of Occupational Tiles ("DOT") 361.685-018, 1991 WL 672987; *Cleaner*, DOT 381.687-018, 1991 WL 673258 DOT; (R. at 69.) The Fourth Circuit recently held that individuals limited to simple, routine tasks can perform reasoning level two jobs. *See Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019). Thus, although the ALJ did not ask the VE to consider a limitation to simple, routine tasks, such a limitation is compatible with the jobs the VE identified. The ALJ's hypothetical, therefore, fairly stated Taylor's impairments.

### 2. *The Unacceptable Parameter*

Next, Taylor argues that a limitation to "no production rate pace work but rather goal-oriented work," is an "unacceptable parameter" that invalidates the ALJ's hypothetical question. *See Thomas*, 916 F.3d at 312; (Dk. No. 10, at 17.) In *Thomas*, the Fourth Circuit did not hold that certain terms create "unacceptable parameter[s]." *Id.* Rather, the Fourth Circuit remanded the case because of several flaws in the ALJ's analysis that, in combination, amounted to "too little

logical explanation for [the court] to conduct meaningful appellate review." *Id.* Indeed, the terms' lack of definition was just one of four errors that left the court unable to determine whether substantial evidence supported the ALJ's findings. Additionally, *Thomas* did not create a categorical rule that failing to define certain terms constitutes a reversible error. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (declining to adopt a categorical rule for determining the substantiality of the evidence).

Here, unlike in *Thomas*, the ALJ provided logical explanations that allow the Court to conduct meaningful review. For example, the ALJ explained that Taylor "cannot perform work at a production rate pace, but she can complete goal-oriented work." (R. at 15-16.) The ALJ did not use the terms "production rate pace" and "goal-oriented work" in isolation. Rather, the ALJ contrasted the terms "production rate pace" and "goal-oriented work," allowing the Court to understand the distinction between the terms the ALJ described. Additionally, the ALJ discussed Taylor's ability to complete tasks, even though she had difficulties performing at a fast pace. (R. at 19.) Thus, the ALJ provided logical explanations that allow the Court to understand what "production rate pace" and "goal-oriented" meant. For these reasons, the ALJ's limitation did not invalidate the ALJ's hypothetical question.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the Commissioner's motion for summary judgment and deny Taylor's motion for summary judgment.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __27__ July 2020
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge

12